UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| BRISTOL ANESTHESIA SERVICES, P.C., ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:15-CV-17 |
| ) | |
| CARILION CLINIC MEDICARE RESOURCES, ) | |
| LLC, d/b/a MAJESTACARE, ) | |
| Defendant. ) | |

MEMORANDUM OPINION AND ORDER

The defendant filed a "Partial Motion to Dismiss," [Doc. 14], pursuant to Federal Rule of Civil Procedure 12(b)(6). The plaintiff filed a response, [Doc. 18], to which the defendant replied, [Doc. 20]. The plaintiff has also filed a "Motion for Writ of Attachment," [Doc. 23]. The defendant has responded, [Doc. 26], and the plaintiff has replied, [Doc. 27]. These matters are ripe for review. For the reasons that follow, the motions are DENIED.

I.  **Factual Background**

Construing the facts alleged in the complaint, [Doc. 1], in the light most favorable to the non-moving party, here the plaintiff, the facts of this case arise from the alleged breach of an implied-in-fact contract between the parties. Plaintiff Bristol Anesthesia Services, P.C. ("Bristol Anesthesia") is a professional corporation formed and located in Tennessee that provides anesthesia services to various medical practices, including Bristol Regional Medical Center ("BRMC") and other healthcare centers in Tennessee. Carilion Clinic Medicare Resources, d/b/a MajestaCare ("MajestaCare"), is a health maintenance organization that provides medical services to Virginia Medicaid participants. MajestaCare had a contract with the Virginia

Department of Medical Assistance Services ("DMAS") to provide care to Virginia Medicaid participants at costs determined by DMAS. DMAS costs are generally less than that of standard private billing costs.

MajestaCare entered into contract with various other healthcare providers throughout Virginia and northeastern Tennessee to provide services to Virginia Medicaid participants. These providers are in MajestaCare's "network." Some of MajestaCare's "network" providers have privileges or provide care at BRMC. While MajestaCare patients were treated at BRMC and other healthcare centers in Tennessee, Bristol Anesthesia provided anesthesia services to MajestaCare's patients through Bristol Anesthesia's contracts with those healthcare centers.

Bristol Anesthesia provided anesthesia services to MajestaCare's patients from about November 2012 to November 2014 treated at the healthcare centers where Bristol Anesthesia provides its services. Bristol Anesthesia has not entered into any written contract with MajestaCare regarding rates for its services nor was Bristol Anesthesia under any contract with DMAS. From November 2012 to about November 2013, Bristol Anesthesia billed MajestaCare for these services on a per unit basis at their standard billing rate. MajestaCare paid in full for these services at Bristol Anesthesia's standard rate until November 2013. In November 2013, MajestaCare informed Bristol Anesthesia that it would no longer pay Bristol Anesthesia's standard billing rate for services performed on Virginia Medicaid patients and would instead only pay the reduced rate determined by DMAS. Bristol Anesthesia informed MajestaCare it would not accept the reduced rate. MajestaCare also "took the position" that it had overpaid for the previous anesthesia services performed from November 2012 to November 2013 and began paying Bristol Anesthesia a rate that was less than half of the DMAS rate in an effort to "recoup" previous "overpayments."

Bristol Anesthesia has brought suit against MajestaCare for breach of implied-in-fact contract, quantum meruit, and wrongful recoupment asking for compensatory damages of $368,393.70, the difference between Bristol Anesthesia's standard billing amount and the rate actually paid by MajestaCare. MajestaCare brought a counterclaim for unjust enrichment and restitution based on the same facts as described above.

## II. Legal Standard

Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) eliminates a pleading or portion thereof that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Moreover, Federal Rule of Civil Procedure 8(a)(2) requires the complaint to contain a "short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss under Rule 12(b)(6) requires the Court to construe the allegations in the complaint in the light most favorable to the plaintiff and accept all the complaint's factual allegations as true. *Meador v. Cabinet for Human Res.*, 902 F.2d 474, 475 (6th Cir. 1990). The Court may not grant a motion to dismiss based upon a disbelief of a complaint's factual allegations. *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir. 1990). The Court must liberally construe the complaint in favor of the party opposing the motion. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). However, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and to "state a claim to relief that is plausible on its face." I*d.* at 570; *see also Ashcroft v. Iqbal*, – U.S. –, 129 S.Ct. 1937, 1949-50 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S.Ct. at 1949. Moreover, this Court need not "'accept as true a legal conclusion couched as a factual

3

allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Ashcroft*, 129 S.Ct. at 1949. Lastly, this Court may consider documents central to the plaintiff's claims to which the complaint refers and incorporates as exhibits. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001).

**III. Analysis**

    **1. Motion to Dismiss**

MajestaCare now moves this Court to dismiss Count 1 of the complaint, breach of implied-in-fact contract, on the basis that the complaint fails to state a claim for which relief may be granted. MajestaCare argues that there was no "mutual assent" or "meeting of the minds" between the parties to enter into an agreement for MajestaCare to pay Bristol Anesthesia's standard billing rates and therefore, there was no contract. This lack of mutual assent, according to MajestaCare, is evidenced by the fact that in November 2013, MajestaCare informed Bristol Anesthesia that it would not pay standard billing rates any longer. MajestaCare states in its motion for dismissal that this change in payment was due to its "mistake" in paying the full billing rate for the prior year. At the very least, MajestaCare argues, it is clear there was no implied-in-fact contract from November 2013 after Bristol Anesthesia was "put on notice" that there was "no meeting of the minds during the time period which Bristol Anesthesia asserts a breach."

In response, Bristol Anesthesia argues that the Court must apply an "objective standard" to determine whether MajestaCare manifested its assent to the implied-in-fact contract to pay the standard billing rate through a course of performance from November 2012 to November 2013. Bristol Anesthesia argues that it is irrelevant, and inadmissible under the 12(b)(6) standard, to consider MajestaCare's "mistake" argument because MajestaCare's payment of the standard

4

billing rate until November 2013 amounted to an outward manifestation of assent regardless of MajestaCare's subjective understanding of the contract terms. In reply, MajestaCare asserts that its actions were at least an "ambiguous course of dealing" between the parties and thus cannot be used to conclude mutual assent under the objective manifestation standard. MajestaCare additionally argues that any breach of the alleged contract occurred after it put Bristol Anesthesia "on notice" of the new rate and therefore the implied-in-fact contract relationship was terminated before any alleged breach occurred.

Tennessee law[1] recognizes two types of implied contracts, those implied in fact and those implied in law. *Angus v. City of Jackson*, 968 S.W.2d 804, 808 (Tenn. Ct. App. 1997). Implied-in-fact contracts arise under "circumstances which show mutual intent or assent to contract" between the parties. *Givens v. Mullikin*, 75 S.W.3d 383, 407 (Tenn. 2002) (quoting *Angus*, 968 S.W.2d at 808). An implied-in-fact contract requires mutual assent, consideration, and a lawful purpose. *Id.*

> An express oral contract and a contract implied in fact are very similar with the primary difference between them being the manner in which the parties manifest their assent. "In an express contract, the parties assent to the terms of the contract by means of words, writings, or some other mode of expression. . . . In a contract implied in fact, the conduct of the parties and the surrounding circumstances show mutual assent to the terms of the contract."

*Thompson v. Hensley*, 136 S.W.3d 925, 930 (Tenn. Ct. App. 2003) (quoting *River Park Hospital, Inc. v. BlueCross BlueShield of Tennessee, Inc.,* No. M2001–00288–COA–R3–CV, 2002 WL 31302926, at *10, (Tenn.Ct.App. Oct.11, 2002), *appl. perm. appeal denied* Feb. 18, 2003).

---

[1] Although MajestaCare is located in Virginia, neither party has argued that Virginia substantive law should apply. Both parties argued this breach of contract claim under Tennessee law. Therefore, the Court will analyze this motion under Tennessee law.

Where parties continue to negotiate the terms of the contract, there is no mutual assent and "proof of an ambiguous course of dealing between the parties from which differing inferences might be drawn regarding additions to or modifications of what was a limited and incomplete agreement is not sufficient to establish the required mutual assent." *Cummons v. Opryland Productions*, No. M1998-00934-COA-R3-CV, 2001 WL 219696, at * 6 (Tenn. Ct. App. March 7, 2001). MajestaCare appears to argue that because it discovered and attempted to correct its "mistake" of overpayment after a year of paying Bristol Anesthesia's standard rate, it acted "ambiguously" such that its conduct of payment cannot be used to show mutual assent. The Court does not agree.

Regarding MajestaCare's argument that any alleged breach occurred only after the implied-in-fact contract had been "terminated" is premature at this stage. "[C]ontracts for an indefinite duration are generally terminable at will by either party with reasonable notice." *McReynolds v. Cherokee Ins. Co.*, 896 S.W.2d 777, 779 (Tenn. Ct. App. 1994). Given that the only record before the Court is the facts alleged in the complaint, the Court cannot determine whether MajestaCare's "notice" was in fact "reasonable." The Court cannot grant dismissal on that basis at this time.

Taking the allegations of the complaint in the light most favorable to the non-moving party, Bristol Anesthesia, the Court finds that facts have been sufficiently pleaded to show that the parties mutually assented to a contract where MajestaCare would pay Bristol Anesthesia's standard billing rate. The Court cannot consider MajestaCare's asserted "mistake" as it is outside of the facts of the complaint. From the complaint's alleged facts, it appears that the plaintiff has pleaded sufficient facts to show that MajestaCare agreed to pay its standard rates when it billed and was paid those standard rates for a period of one year without issue between

6

the parties. During that period of time, the complaint does not allege facts that the parties continued to negotiate or that MajestaCare's actions were ambiguous in any way by paying the full bill for each patient. A change in payment after a year of full payment does not show "ambiguity" sufficient for the Court to grant MajestaCare's motion to dismiss.

### 2. Writ of Attachment

Bristol Anesthesia has moved this Court pursuant to Federal Rule of Civil Procedure 64 and Tennessee Code Annotated § 29-6-101 *et seq.* for a writ of attachment of not less than the amount of alleged damages to attach to money deposited in MajestaCare's Wells Fargo bank account. For the reasons that follow, this motion is DENIED.

Federal Rule of Civil Procedure 64 gives federal courts jurisdiction to impose every remedy available under the laws of state where the court is located to secure satisfaction of a potential judgment. Fed. R. Civ. P. 64(a). This rule specifically contemplates the remedy of attachment. Fed. R. Civ. P. 64(b). Under the Tennessee law:

> Any person having a debt or demand due at the commencement of an action, or a plaintiff after action for any cause has been brought, and either before or after judgment, may sue out an attachment at law or in equity, against the property of a debtor or defendant, in the following cases:
>
> (1) Where the debtor or defendant resides out of the state.

Tenn. Code Ann. § 29-6-101. Here, Bristol Anesthesia alleges as the grounds for its entitlement to an attachment the fact that MajestaCare "resides" out of the state of Tennessee. MajestaCare is a Virginia limited liability company with its sole member a Virginia corporation. Bristol

Anesthesia cites to no other enumerated ground to show entitlement to an attachment under Tenn. Code Ann. § 29-6-101.[2]

The defendant makes two arguments to show that a writ of attachment should not issue. The first is that there is no "heightened threat" present that would merit the award of an attachment on their property. The second is that the plaintiff is statutorily prohibited from obtaining a writ of attachment on a debt that is not yet due where the only ground for attachment is the residence of the defendant. Because the second reason is dispositive of the motion, the Court will not address the first.

Tennessee Code Annotated § 29-6-102 states "An attachment may, in like manner, be sued out upon debts or demands not due, in any of the cases mentioned in § 29-6-101, except the first; that is, when the debtor or defendant resides out of the state." *See also Heartland Payment Systems, Inc. v. Hickory Mist Luxury Cabin Rentals, LLC, et al.*, No. 3:11-CV-350, 2011 WL 6122371, at *3 (E.D. Tenn. Dec. 8, 2011). This statute precludes attachment where the only ground cited for attachment is the residence of the defendant, the exact case we have here. Bristol Anesthesia argues that because section 101 contemplates attachment against a defendant "at the commencement of an action" that somehow the plain language of section 102 only "refers to debts that are unliquidated or where the time for payment has not yet arrived." Bristol Anesthesia cites no authority for that unique proposition or explains any further. The Court does not agree with this interpretation. To do so would require the Court, without any authority, to ignore the plain language of section 102, titled "exceptions," which clearly states where a "debt is not due," the residence of the defendant cannot be the only ground of attachment. To follow

---

[2] Bristol Anesthesia has stated that it believes MajestaCare is in the process of dissolving and winding up its business in Virginia, a fact confirmed by MajestaCare in its response to the motion for writ of attachment. However, Bristol Anesthesia offers no proof in the form of an affidavit that MajestaCare is *fraudulently* disposing of its assets through this winding up process governed by Virginia statute. Tennessee Code Annotated 29-6-101(6) cites as a ground for attachment the *fraudulent* disposition of property.

8

Case 2:15-cv-00017-JRG-MCLC   Document 32   Filed 03/08/16   Page 8 of 9   PageID #: 183

Bristol Anesthesia's claim, a writ of attachment could be issued on any breach of contract claim involving an out of state defendant from the commencement of the action where the plaintiff alleges it is "due" money under the contract. Bristol Anesthesia has cited no authority for this proposition and the Court could find no case law to support it. In fact, the *Heartland* case held that a writ of attachment could not issue under a breach of contract claim because the debt was not yet "due" and only basis for attachment was the defendant's residence. *Id*.

Bristol Anesthesia also attempts to distinguish the *Heartland* case by claiming that case "dealt with an unliquidated debt—damages for a contracting party's failure to perform its contractual obligations to process all bankcard transactions for a cabin rental business." Bristol Anesthesia further states that the debt in this matter "is liquidated and already due and owing." The Court does not agree with the defendant's distinction. *Heartland* involved a breach of contract case where the defendant allegedly failed to pay on a guaranty contract an amount of about $350,000 of debt incurred by the plaintiffs pursuant to the written contract between the parties. The situation is no different here. Because the Tennessee statute prohibits the issuance of a writ of attachment for a debt not yet due where the only basis for attachment is that the defendant resides out of state, Bristol Anesthesia's Motion for Writ of Attachment, [Doc. 23], is DENIED.

### IV. Conclusion

For the reasons stated above, it is hereby ordered that Majestacare's Motion to Dismiss, [Doc. 14], is DENIED. It is further ordered that Bristol Anesthesia's Motion for Writ of Attachment, [Doc. 23], is DENIED.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
