UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| **BRISTOL ANESTHESIA SERVICES, P.C.** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 2:15-cv-17 |
| ) | |
| **CARILION CLINIC MEDICARE** ) | |
| **RESOURCES, LLC, d/b/a** ) | |
| **MAJESTACARE,** ) | |
| ) | |
| Defendant. ) | |

**RESPONSE IN OPPOSITION TO BRISTOL ANESTHESIA SERVICES, P.C.'S MOTION IN LIMINE OBJECTING TO CERTAIN EXHIBITS**

Defendant/Counter-Plaintiff Carilion Clinic Medicare Resources, LLC, d/b/a MajestaCare ("MajestaCare") responds in opposition to Plaintiff/Counter-Defendant's Motion in Limine Objecting to Certain Exhibits (Doc. No. 84).

## I. Introduction

MajestaCare during the relevant time period was a Virginia managed care organization ("MCO") with a contract with the Virginia Department of Medical Assistance Services ("DMAS"), pursuant to which it enrolled Virginia Medicaid beneficiaries and paid providers for the services provided to its Medicaid enrollees. DMAS sets rates applicable to services provided to Virginia Medicaid enrollees. Bristol Anesthesia provided services to some of MajestaCare's Medicaid enrollees. MajestaCare at all times endeavored to reimburse providers at rates benchmarked to DMAS rates, which is the standard for DMAS and the MCOs with which it contracts to provide healthcare benefits to Medicaid enrollees. MajestaCare initially mistakenly overpaid anesthesia providers based on an incorrect algorithm used in the automated adjudication

of provider claims, which failed to convert minutes reported for anesthesia claims to units. When this mistake was discovered, it was corrected.

Bristol Anesthesia has consistently accepted DMAS rates from DMAS for services provided to Medicaid enrollees. Other anesthesia providers which provided services to Virginia Medicaid enrollees have similarly accepted DMAS rates for those services, confirming that this is the norm in the managed care industry.

Bristol Anesthesia has moved the Court to exclude evidence that confirms both its practice of accepting DMAS rates and these industry norms. As explained more fully below, such evidence is relevant to Bristol Anesthesia's implied-in-fact contract and *quantum meruit* claims, as well as MajestaCare's counterclaim, and is thus admissible.

## II. Argument

MajestaCare addresses each of Bristol Anesthesia's objections in turn:

**Defendant's Exhibits 7 and 35**

Defendant's Exhibit 7[1] is a participation agreement Bristol Anesthesia completed and submitted to DMAS. (*See* Deposition of Kimbery D. Hilton ("Hilton Dep.") at 15-16). It was obtained by MajestaCare when DMAS provided it pursuant to a Freedom of Information Act ("FOIA") request for "a copy of the Medicaid participation agreement for Bristol Anesthesia Services, PC," a copy of which has been designated by MajestaCare as Defendant's Exhibit 35. The FOIA response indicates that DMAS considered it to be "the provider participation agreement signed [by Bristol Anesthesia] in 2007). (*See* Df's Ex. 35).

Although Bristol Anesthesia does specifically state its evidentiary objection to Defendant's Exhibit 7, it appears to be an objection to relevance. Bristol Anesthesia's objection

---

[1] MajestaCare notes the inadvertent duplication in a few of its exhibits and will address them before its exhibits are submitted to the Court.

4834-3016-0715.1

is unsupported because Exhibit 7 is relevant and thus admissible under Fed. R. Evid. 401 and 402. Bristol Anesthesia's submission to DMAS of a participation agreement shows that it was agreeable to DMAS reimbursement rates for Virginia Medicaid enrollees (like the Virginia Medicaid enrollees who participated in the MajestaCare plan), and is thus relevant to the reasonable reimbursement rate for the claims at issue.

Bristol Anesthesia's argument that "there is no evidence [showing] that [it] otherwise agreed to its terms," (Pl's Motion at 1, Doc. No. 84), is completely belied by the undisputed facts that (i) Bristol Anesthesia completed the participation agreement; (ii) Bristol Anesthesia submitted it to DMAS; (iii) Bristol Anesthesia in fact accepted DMAS rates (based on DMAS' conversion factor) from DMAS, and never demanded more, (Hilton Dep. at 20-21); and (iv) Bristol Anesthesia represented to the community through its own website that it participated with, among other insurers, "Virginia Medicaid." (*See* Df's Ex. 9).

A reasonable fact-finder can conclude that Bristol Anesthesia did intend to participate with Virginia Medicaid (like it represented to the community through its website), which negates Bristol Anesthesia's objection to its admissibility. But regardless of whether the participation agreement it submitted to DMAS was a binding contract, its submission to DMAS, in conjunction with all of the facts identified above, makes it highly probative of Bristol Anesthesia's concession that DMAS rates are reasonable rates for reimbursement of claims related to Virginia Medicaid enrollees, like MajestaCare's participants.

Defendant's Exhibit 35 is the FOIA request through which the participation agreement Bristol Anesthesia submitted to DMAS was obtained by MajestaCare. To the extent Bristol Anesthesia is challenging its relevance, MajestaCare incorporates its arguments above.

Bristol Anesthesia also asserts that the DMAS' FOIA response is inadmissible under Fed.

4834-3016-0715.1

3

Case 2:15-cv-00017-JRG-MCLC Document 87 Filed 07/14/17 Page 3 of 7 PageID #: 1296

R. Evid. 801(c) and 802. Courts have previously applied the public records hearsay exception to FOIA responses. *See e.g.*, *McClellan v. I-Flow Corp.*, No. 07-1309, 2010 U.S. Dist. LEXIS 107641, *15 (D. Or. Oct. 7, 2010). The exception applies here. DMAS' FOIA response from its Public Information Officer through its dedicated FOIA response email address (FOIA@DMAS.Virginia.gov) is a statement of a public office that sets out a matter observed while under a legal duty to report. *See* FED. R. EVID. 803(8).

Even if DMAS' FOIA response did not fall within a hearsay exception, it should be admitted for the purpose of establishing the context for the provider agreement Bristol Anesthesia submitted to DMAS. Bristol Anesthesia continues to reference the provider agreement with terms like an "unsigned purported agreement" and thus continues to ignore the logical implications of the highly probative fact that *it* filled out and submitted the provider agreement to DMAS.

**Defendant's Exhibit 13**

Defendant's Exhibit 13 is a chart identifying the rates other anesthesia providers agreed to accept (as a percentage of DMAS rates) for Medicaid enrollees who participated in MajestaCare's plan. It confirms that other anesthesia providers accepted between 100% and 110% of DMAS rates. Network rates are relevant in determining the reasonable rate for services and thus in this case, whether Bristol Anesthesia has already been a reasonable rate by MajestaCare. *See River Park Hosp., Inc. v. BlueCross BlueShield of Tenn., Inc.*, 173 S.W.3d 43, 60 (Tenn. Ct. App. 2002). Indeed, the Tennessee case Bristol Anesthesia cites, *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 198-99 (Tenn. 2001), confirms that "similar charges of other [providers] in the community" were relevant to reasonable rates. (*See* Pl's Response at 2, Doc. 84). Defendant's Exhibit 13 reflects the charges other anesthesia providers in the

4834-3016-0715.1

4

Case 2:15-cv-00017-JRG-MCLC Document 87 Filed 07/14/17 Page 4 of 7 PageID #: 1297

community are willing to accept for services provided to Medicaid enrollees participating in MajestaCare's plan. Defendant's Exhibit 13 thus contains relevant, and highly probative, evidence.

The Alabama case Bristol Anesthesia cites, *Eufala Hosp. Corp. v. Lawrence*, 32 So.3d 30, 45-46 (Ala. 2009) does not support Bristol Anesthesia's objection. As a threshold matter, it applied Alabama and not Tennessee law. *Id.* at 45. Substantively, *Eufala* involved claim asserted by a plaintiff "who was not participating in Medicare or Medicaid." *Id.* at 31. The plaintiff in *Eufala* was a patient without medical insurance who also did not participate in Medicare or Medicaid. Prior to receiving treatment by the defendant hospital, she signed an admission contract that obligated her to pay the hospital "in accordance with the regular rates and terms of the Facility." *Id*. The plaintiff subsequently sued, in essence alleging she had been overcharged, and thus implicating the reasonable value of the services she received. *Id.* at 32. One of the plaintiff's arguments was that the hospital accepted lower rates from Blue Cross, Medicare, and Medicaid, and thus those rates should apply to her. *Id.* at 46. The Alabama Supreme Court concluded that those rates "may not be the baseline on which to calculate a reasonable charge for the medical services rendered" for this particular plaintiff-patient, who as discussed above was not covered by insurance or enrolled in Medial or Medicaid and thus did not fall within those "classes of patients." *Id.* at 46.

*Eufala* does not hold that Medicaid rates are irrelevant, which wholly belies its applicability to Bristol Anesthesia's relevance objection. But in addition, it materially distinguishable because here, the "class of patients" at issues *is* Virginia Medicaid enrollees, for which Medicaid reimbursement rates are highly relevant.

**<u>Defendant's Exhibit 14</u>**

Defendant's Exhibit 14 identifies all of the anesthesia providers who were initially overpaid by MajestaCare due to the incorrect algorithm used to process reimbursement claims. It is relevant to Bristol Anesthesia's implied-in-fact contract claim because it demonstrates that the initial overpayments were based on a mistake, and a mistake which many other providers understood as such and did not challenge a correction and appropriate recoupment. (*See* Deposition of Donna Littlepage ("Littlepage Dep.") at 153). It is relevant to Bristol Anesthesia's *quantum meruit* claim because it, when coupled with testimony that other anesthesia providers did not challenge MajestaCare's recoupment of overpayments, indicates that other anesthesia providers accept DMAS rates as the benchmark for reasonable rates. And it is relevant to MajestaCare's recoupment claim because it demonstrates that MajestaCare's recoupment efforts were not limited to Bristol Anesthesia but consistent across multiple anesthesia providers who did not challenge them, which tends to show that those recoupment efforts were reasonable. These multiple bases for relevance make Defendant's Exhibit 14 admissible under Fed. R. Evid. 401 and 402.

### III. Conclusion

Based on the foregoing, Bristol Anesthesia's objections to MajestaCare's identified exhibits should be overruled, and its motion in limine denied.

/s/John E. B. Gerth
John E. B. Gerth (Tenn. BPR 024439)
Waller Lansden Dortch & Davis, LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219
Telephone: (615) 244-6380
Facsimile: (615) 244-6804
E-mail: jeb.gerth@wallerlaw.com

*Attorneys for Defendant Carilion Clinic Medicare Resources, LLC, d/b/a MajestaCare*

## CERTIFICATE OF SERVICE

I certify that I have served a true and correct copy of the foregoing *via* the Court's electronic filing system upon:

R. Lucas Hobbs
Elliott Lawson & Minor, P.C.
110 Piedmont Avenue, Suite 300
Bristol, VA 24201

on July 14, 2017.

/s/John E. B. Gerth

4834-3016-0715.1

7

Case 2:15-cv-00017-JRG-MCLC  Document 87  Filed 07/14/17  Page 7 of 7  PageID #: 1300