UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| BRISTOL ANESTHESIA SERVICES, P.C., ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CARILION CLINIC MEDICARE RESOURCES, ) <br> LLC, d/b/a MAJESTACARE, ) <br> Defendant. ) | No. 2:15-CV-17 |

MEMORANDUM OPINION AND ORDER

This matter is before the Court to address two motions for summary judgment. The plaintiff, Bristol Anesthesia Services, P.C. ("Bristol Anesthesia"), filed a motion for partial summary judgment as to Counts One and Two of the complaint. [Doc. 52]. The defendant, Carilion Clinic Medicare Resources, d/b/a MajestaCare ("MajestaCare"), responded to the motion, [Doc. 67], and Bristol Anesthesia filed a "supplement." [Doc. 70]. Also before the Court is MajestaCare's motion for summary judgment as to all counts of the complaint. [Doc. 56]. Bristol Anesthesia responded to the motion for summary judgment, [Doc. 61], and MajestaCare replied. [Doc. 71]. The matters are ripe for review.

I.  **Factual Background**

Bristol Anesthesia is a medical practice that provided anesthesia services to the enrollees in the MajestaCare's managed care organization ("MCO"). [Doc. 66 ¶¶ 1, 2]. Bristol Anesthesia provided these services from 2012 to November 2014 at Bristol Regional Medical Center ("BRMC"). [*Id.*]. Bristol Anesthesia's medical professionals are the only anesthesiologists at BRMC; however, Certified Registered Nurse Anesthetists also provide anesthesia services at

1

BRMC. [Doc. 59 ¶ 4; Doc. 60 ¶ 4]. MajestaCare had a contract with the Virginia Department of Medical Assistance Services ("DMAS") to provide care to Virginia Medicaid participants. [Doc. 59 ¶ 2]. DMAS was required to approve MajestaCare's provider network prior to enrolling Virginia Medicaid enrollees, and did so in mid-2012. [*Id.* ¶¶ 7, 8]. Bristol Anesthesia was never in MajestaCare's approved provider network. [*Id.* ¶ 9].

The parties had no written contract regarding rates for anesthesia services provided nor was Bristol Anesthesia under any contract with DMAS to determine rates for services provided. [*Id.* ¶ 9]. MajestaCare hired a third party, Aetna, to administer the billing system for MajestaCare operations. [*Id.* ¶ 5]. Aetna developed an algorithm to calculate the appropriate payment for services such as anesthesia services provided by Bristol Anesthesia. Anesthesia claims are generally billed in either "base units" or "time units." [*Id.* ¶ 11]. Time units are measured in either 10 or fifteen-minute increments. [*Id.*, Doc. 60 ¶ 11]. The total number of units for a particular procedure is then multiplied by a "conversion factor," expressed in dollars. [Doc. 59 ¶11]. The DMAS regulated conversion factor was $12.84 per unit from 2012 to 2014. [*Id.* ¶ 12].

As of January 1, 2012, federal regulations required reporting anesthesia services only in minutes and these services could no longer be reported in units. [*Id.* ¶ 18]. When Aetna developed the algorithm for anesthesia services, Aetna failed to change the calculation from "units" to minutes as required by the changed regulations. [*Id.* at 19]. MajestaCare argues that this mistake in the algorithm "resulted in minutes being calculated as if they were time units (15-minute increments), in turn resulting in the time unit used to adjudicate claims being 15 times greater than it should have been." [*Id.*]. By October 2013, the mistake was noticed and corrected in the algorithm. [*Id.* ¶ 29]. By November 5, 2013, Bristol Anesthesia and similarly situated service

providers were notified of the error and of MajestaCare's intention to "fix the errors going forward and recoup past overpayments within the last 12 months." [*Id.* ¶¶ 28, 29].

Before the time that the mistake in the algorithm was found, Bristol Anesthesia accepted payments from MajestaCare for services provided to its enrollees. [*Id.* at ¶ 21, 22; Doc. 60 ¶ 25]. The parties agree that some of these payments were below the standard billing rate of Bristol Anesthesia. [Doc. 59 ¶ 21, 22; Doc. 60 ¶ 21, 22]. Bristol Anesthesia presented some deposition testimony that some of the bills were paid in full. [Doc. 60 ¶25; *Teed Depo.* at 69, 70]. According to MajestaCare, after November 2013 it began submitting remittance payments that were adjusted pursuant to the corrected algorithm and "re-adjusted past reimbursement claims (going back one year from notice), and applying overpayments to newly submitted reimbursement claims to resolve the overpayments." [Doc. 59 ¶ 30]. Bristol Anesthesia states that "MajestaCare did not pay Bristol Anesthesia's claims during the referenced [recoupment] process but instead, provided certain minimal credit, below Virginia Medicaid rates, toward an asserted overpayment amount." [Doc. 60 ¶ 32].

On January 16, 2015, Bristol Anesthesia brought suit against MajestaCare for breach of implied-in-fact contract, *quantum meruit*, and wrongful recoupment asking for compensatory damages of $368,393.70, the difference between Bristol Anesthesia's standard billing amount and the rate actually paid by MajestaCare. MajestaCare brought a counterclaim for unjust enrichment and restitution based on the same facts as described above. These counterclaims are not the subject of either motion.

MajestaCare is in the process of "winding up" its business. MajestaCare made a required filing with the Virginia Bureau of Insurance ("VBI") for the quarter ending September 30, 2015, after Bristol Anesthesia filed this suit. [Doc. 66 ¶ 4]. This statement was signed by Donna

Littlepage ("Littlepage"), president of Carillion Clinic. [*Id.* ¶ 5]. MajestaCare reported to the VBI that it had $1,256,317 of unpaid claims among its liabilities. [*Id.* ¶ 8]. This reported amount of liability included Bristol Anesthesia's claim for $368,393.70, the subject of this suit. [*Id.* ¶ 12]. As of MajestaCare's VBI filing on September 30, 2016, Bristol Anesthesia's claim of $368,393.70 is the only remaining claim listed in the liabilities line, all other liabilities have been paid. [*Id.* ¶ 13]. The $368,693.70 claim by Bristol Anesthesia, listed as a liability on the quarterly statement, is not noted or marked as "contingent." [*Id.* ¶ 10].

Littlepage submitted a declaration stating, "since the filing of this lawsuit in January 2015, [Carilion Clinic] has listed Bristol Anesthesia's asserted claim as a liability or "claim" in its Quarterly Statements, and out of an abundance of caution has reserved for it." [*Littlepage Declaration* ¶ 3]. Littlepage also declared that MajestaCare notified the VBI that the claim is "contested and is the subject of ongoing litigation." [*Id.*]. Littlepage further declared that MajestaCare has "always contested" this claim and "never intended to represent it to the [VBI] or anyone else as anything different than a contested claim." [*Id.* ¶ 4]. According to Littlepage's declaration, MajestaCare gains no benefit from reporting Bristol Anesthesia's claim as uncontested because had the contingent nature of the claim been found to be "remote," MajestaCare could have suspended quarterly reporting to VBI altogether. [*Id.* ¶ 7].

India Thomas, the Regional Practice Director of Carilion Clinic, filed a declaration stating that in October 2016, she contacted the VBI and explained that the "only outstanding claim at issue was the subject of a pending suit." [*Thomas Declaration* ¶3]. The opening email states, "The only item that is outstanding is a remaining claim that is in a legal dispute for our Medicaid plan." [Doc. 66-1].

## II. Legal Standard

Summary judgment is proper where the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Id.* at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McClain v. Ontario, Ltd.*, 244 F.3d 797, 800 (6th Cir. 2000). This Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If this Court concludes that a fair-minded jury could not return a verdict in favor of the non-moving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

The party opposing a Rule 56 motion may not simply rest on the mere allegations or denials contained in the party's pleadings. *Anderson*, 477 U.S. at 256. Instead, an opposing party must affirmatively present competent evidence sufficient to establish a genuine issue of material fact necessitating the trial of that issue. *Id.* Merely alleging that a factual dispute exists cannot defeat a properly supported motion for summary judgment. *Id.* A genuine issue for trial is not established by evidence that is merely colorable, or by factual disputes that are irrelevant or unnecessary. *Id.* at 248-52.

## III. Analysis

### A. Bristol Anesthesia's Motion for Summary Judgment—Judicial Estoppel

Bristol Anesthesia moves this Court to grant summary judgment in its favor as to Counts One and Two on the basis of judicial estoppel. Bristol Anesthesia argues that MajestaCare has "admitted, in multiple sworn filings with the [VBI], that every penny of the $368,393.78 it seeks in this lawsuit is an unpaid claim, and a liability of [MajestaCare]." According to Bristol Anesthesia, because the filing does not have a notation indicating this liability or claim is "contingent," MajestaCare has admitted in a sworn filing that it does not contest this lawsuit and therefore owes Bristol Anesthesia this money.

Judicial estoppel generally prevents a party from asserting a claim or a legal position that is inconsistent with a claim taken by that party in a prior proceeding. *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). "Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Id.* (citing *Davis v. Wakelee*, 156 U.S. 680, 689 (1895). Judicial estoppel prohibits parties from changing positions according to the

"exigencies of the moment," *id.* at 750 (quoting *United States v. McCaskey*, 9 F.3d 368 (5th Cir. 1993), prevents parties playing "fast and loose with the courts," *id.* (quoting *Stretch v. Watson*, 69 A.2d 596, 603 (N.J. 1949), and prevents the "improper use of judicial machinery." *Id.* (quoting *Konstantinidis v. Chen*, 626 F.2d 933, 938 (D.C. Cir. 1990). In order to invoke the doctrine of judicial estoppel, a party must show that the opponent "took a contrary position under oath in a prior proceeding and that the prior position was accepted by the court." *Teledyne Indus., Inc. v. N.L.R.B.*, 91 F.2d 1214, 1218 (6th Cir. 1990).

The Court should consider a few factors when determining whether judicial estoppel applies; however, there is no set formula or exhaustive list. *New Hampshire*, 532 U.S. at 750-51. First, a party's position must be "clearly inconsistent" with the earlier position. *Id.* (citing *United States v. Hook*, 195 F.3d 299, 306 (7th Cir. 1999)). Second, the court should consider whether judicial acceptance of the later position creates the perception that either the first or second court was misled. *Id.* (citing *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 599 (6th Cir. 1982)). A third consideration is whether the party asserting an inconsistent position would derive an "unfair advantage or impose an unfair detriment" on the opposing party if not estopped. *Id.* at 751 (citing *Davis v. Wakelee*, 156 U.S. 211, 227 (2000)). The Sixth Circuit has also held that the court may consider the presence or absence of bad faith in determining whether judicial estoppel should be applied. *See Eubanks v. CBSK Financial Group, Inc.*, 385 F.3d 894, 898 (6th Cir. 2004) (holding that judicial estoppel was not appropriate where the bankruptcy debtor took affirmative steps to make the bankruptcy court and trustee aware of the existence of a claim before the bankruptcy action was closed despite the fact that the claim was not listed as an asset). In *Eubanks*, the bankruptcy debtor failed to disclose an asset in the bankruptcy proceeding but notified the trustee of the claim during a meeting, asked the trustee multiple times if he intended to pursue the claim

7

on behalf of the estate, requested the bankruptcy court hold a status conference to discuss the issue of the claim, and filed an amendment to the bankruptcy petition. *Id.*

Bristol Anesthesia argues that the filing before the VBI, stating that the damages requested by Bristol Anesthesia in this suit is a "liability," is sufficient to prevent MajestaCare from disputing the claim at all in this matter. According to Bristol Anesthesia, because the claim was not noted as "contingent" on the VBI reporting form, MajestaCare reported under oath to the VBI that the claim was undisputed and not contingent. Therefore, according to Bristol Anesthesia, MajestaCare cannot now argue that the amount requested is in dispute and summary judgment should be granted in its favor. On the other hand, MajestaCare argues that this disclosure does not support finding in favor of Bristol Anesthesia on the issue of judicial estoppel. MajestaCare argues first that it has always maintained that the claim is contingent and subject to the outcome of this litigation despite the fact that the contingent nature is not explicitly noted on the form. Second, MajestaCare argues that it did inform the VBI that the liability was contingent on the outcome of a legal suit and therefore MajestaCare has not misled either the VBI or this Court. Finally, MajestaCare argues that it has derived no benefit from the VBI filing and had no motive to report the claim was not contingent.

Even assuming that the statement to the VBI constitutes a "prior proceeding" within the meaning of the judicial estoppel doctrine, Bristol Anesthesia has not shown that the VBI "accepted" or adopted the statement or took any action based on the submission of that statement. Bristol Anesthesia argues in its memorandum that the VBI "found that [MajestaCare's] affairs were in order." However, Bristol Anesthesia provided no support, either legal or factual, for this statement. Unlike where a party successfully persuaded a prior court to adopt or rely on its

argument or fact, nothing in the record provides any proof that the VBI used this statement for any purpose.

Other considerations also weigh against applying judicial estoppel here. Importantly, MajestaCare presented evidence that the VBI was aware of the contingent, disputed nature of the liability. India Thomas, MajestaCare's Director of Compliance, submitted a declaration stating that in October 2016 she exchanged emails with Senior Insurance Financial Analyst Connie Duong regarding this legal suit. [Doc. 66-1]. In the emails attached to Thomas's declaration, Thomas states that the "only item that is outstanding is a remaining claim that is in a legal dispute" and that MajestaCare does not have any unpaid claims at the time "unless legal suite (sic) would require additional payment" and that MajestaCare cannot submit a "zero due" statement and receive an exemption from filing an actuarial opinion "due to the claims dispute/lawsuit which is [MajestaCare's] only remaining item." [Doc. 66-1 at 4-6]. This evidence clearly shows that the VBI was aware that the only remaining claim listed on MajestaCare's quarterly filing was a disputed claim subject to a legal suit.

Bristol Anesthesia argues that these emails are "unsworn" and cannot be considered to contradict the sworn statement in the quarterly statement. The Court does not find this distinction persuasive here. Similar to the bankruptcy debtor in *Eubanks*, MajestaCare has reached out to the VBI and discussed the nature of the liability and from the email it appears that the VBI was aware that these claims were in dispute. Furthermore, Bristol Anesthesia has presented no evidence or compelling argument as to any "unfair advantage" that MajestaCare received from listing the claim in the liabilities section of the quarterly statement. From the evidence presented by MajestaCare, it appears that because they listed the suit as "claim," it was required to provide an actuarial opinion

9

that may not have otherwise been required if it had submitted a "zero claim" balance. [*See* Doc. 66-1]. Bristol Anesthesia's motion for partial summary judgment, [Doc. 52], is DENIED.

### B. MajestaCare's Motion for Summary Judgment

#### a. Implied-in-Fact Contract

MajestaCare moves for summary judgment in its favor on all of the plaintiff's claims of breach of implied-in-fact contract, *quantum meruit*, and wrongful recoupment. MajestaCare first argues that Bristol Anesthesia's claim for an implied-in-fact contract fails as a matter of "undisputed fact and law." [Doc. 56 at 11].

Tennessee law[1] recognizes two types of implied contracts, those implied in fact and those implied in law. *Angus v. City of Jackson*, 968 S.W.2d 804, 808 (Tenn. Ct. App. 1997). Implied-in-fact contracts arise under "circumstances which show mutual intent or assent to contract" between the parties. *Givens v. Mullikin*, 75 S.W.3d 383, 407 (Tenn. 2002) (quoting *Angus*, 968 S.W.2d at 808). An implied-in-fact contract requires mutual assent, consideration, and a lawful purpose. *Id.*

> An express oral contract and a contract implied in fact are very similar with the primary difference between them being the manner in which the parties manifest their assent. "In an express contract, the parties assent to the terms of the contract by means of words, writings, or some other mode of expression. . . . In a contract implied in fact, the conduct of the parties and the surrounding circumstances show mutual assent to the terms of the contract."

*Thompson v. Hensley*, 136 S.W.3d 925, 930 (Tenn. Ct. App. 2003) (quoting *River Park Hospital, Inc. v. BlueCross BlueShield of Tennessee, Inc.,* No. M2001–00288–COA–R3–CV, 2002 WL 31302926, at *10, (Tenn. Ct. App. Oct.11, 2002), *appl. perm. appeal denied* Feb. 18, 2003)).

---

[1] Although MajestaCare is located in Virginia, neither party has argued that Virginia substantive law should apply. Both parties argued this breach of contract claim under Tennessee law. Therefore, the Court will analyze this motion under Tennessee law.

MajestaCare argues that the implied-in-fact contract claim should be dismissed because there was no mutual assent as to the terms of a contract for payments. Prior to the discovery of the algorithm mistake, MajestaCare argues that it never paid Bristol Anesthesia's billings in full or at standard rates. Bristol Anesthesia submitted testimony from Jim Teed that at least some of Bristol Anesthesia's billings were paid in full. [*Teed Depo.* at 69]. The parties both presented evidence that Bristol Anesthesia also accepted payment from MajestaCare for less than the standard billing rate during this period of time. MajestaCare argues that because it never paid Bristol Anesthesia's full standard rate, there was never mutual assent between the parties and the claim must be dismissed. Bristol Anesthesia argues that the circumstances for an implied-in-fact contract should be viewed objectively, not through the subjective mind of the defendant.

It is unclear from the evidence presented how many of the bills were paid in full by MajestaCare or what percentage the rate was discounted in others. Bristol Anesthesia has presented evidence that at least some of the bills were paid in full at the standard rate before the algorithm mistake was discovered. Both parties agree that Bristol Anesthesia accepted a reduced payment on some of the billings during this period. However, there has been no evidence presented as to how often either of these events occurred. Depending upon the circumstances, either course of conduct could have established an implied-in-fact contract between the parties depending upon the number of bills that were paid in full or if a standard, uniform percentage discount was accepted. Bristol Anesthesia has presented some evidence that there may have been conduct between the parties amounting to mutual assent regarding payment at full or partially discounted rates. This evidence is sufficient to defeat summary judgment as Bristol Anesthesia has raised a genuine issue of material fact. MajestaCare's motion for summary judgment on the breach of contract claim is DENIED.

### b. *Quantum Meruit*

MajestaCare moves the Court to grant summary judgment in its favor on the *quantum meruit* claim because Bristol Anesthesia "has already been paid the reasonable value of services provided." [Doc. 56 at 13]. In Tennessee, a claim for *quantum meruit* provides an "equitable substitute" for a contract where a party may recover a "reasonable value of goods and services provided" if certain circumstances are shown. *Doe v. HCA Health Svcs. of Tenn., Inc.*, 46 S.W.3d 191, 197-98 (Tenn. 2001). In order to state a viable *quantum meruit* claim, the plaintiff must show (1) there is no existing, enforceable contract between the parties regarding the same matter; (2) the party seeking recovery provided valuable goods and services; (3) the party to be charged received those goods or services; (4) the transaction circumstances indicate that the parties should have reasonably understood that the service provider expected to be compensated; and (5) the circumstances demonstrate it would be unjust for the receiver to retain the goods or services without payment. *Id.*

MajestaCare argues that while it is reasonable for Bristol Anesthesia to expect to be reimbursed for their services provided to its enrollees, it is "objectively *unreasonable*" to expect to be reimbursed at its billed rates. [Doc. 56 at 14]. Essentially, MajestaCare disputes Bristol Anesthesia's claim that it has not been reasonably compensated for providing anesthesia services to MajestaCare enrollees. According to MajestaCare, a reasonable payment for Bristol Anesthesia's services is a repayment consistent with payments made to similar providers by other MCOs in the industry, which is not full payment of standard billing rates but is a discounted rate equal to the DMAS rate. MajestaCare also submitted evidence that Bristol Anesthesia has accepted payments below their standard billing rates in the past and some of those reimbursements had been discounted to equal the DMAS rate. [*Hilton Depo* at 21, 40].

Bristol Anesthesia argues that the "reasonable value" of the services provided cannot be decided on summary judgment because there is considerable dispute as to the reasonable value of the services rendered. [Doc. 61 at 12]. Bristol Anesthesia argues that under Tennessee law, the fact finder must consider evidence other than merely what MajestaCare paid other similar providers. The Tennessee Supreme Court has said when considering the reasonable value of services provided by a hospital, the factfinder should consider the "hospital's internal factors as well as the similar charges of other hospitals in the community." *Doe*, 46 S.W.3d at 198.

Given the stage of the proceeding, the Court cannot conclude at this time what the "reasonable" compensation for Bristol Anesthesia's services under its *quantum meruit* claim. Both parties have presented evidence of potential rates of compensation, including Bristol Anesthesia's standard billing rate, which has been paid by some, a rate similar to the DMAS rate, as well as the initial invoices where MajestaCare paid well above the DMAS rate. There exists a genuine issue of material fact on the issue of appropriate rate that cannot be decided at this stage. MajestaCare's motion for summary judgment as to the *quantum meruit* claim is DENIED.

### c. Wrongful Recoupment

MajestaCare moves the Court to grant summary judgment in its favor on Bristol Anesthesia's wrongful recoupment claim because the overpayments were made due to a "mistake" and therefore recoupment was lawful and appropriate. [Doc. 56 at 16]. Recoupment is appropriate under circumstances where equity and good conscience require the recipient to return the money. *Burkhart v. United States Commerce Equip. Fin.*, No. E2001-00069-COA-R3-CV, 2001 WL 984915, at *8 (Tenn. Ct. App. Aug. 28, 2001) (citing *Ryan v. Tinker*, 744 S.W.2d 502, 504 (Mo. Ct. App. 1988)). One circumstance that may support recoupment is where the party received the money "due to a mistake." *Id.* (citing *Blue Cross Health Servs., Inc. v. Sauer*, 800 S.W.2d 72, 76

(Mo. Ct. App. 1994)). MajestaCare argues that the earlier payments to Bristol Anesthesia were made pursuant to a "mistake" in their algorithm that resulted in overpayments for services.

Although MajestaCare argues the overpayments were due to a "mistake," such a mistake does not automatically warrant recoupment. Mistake is only one circumstances to be considered. *Id.* The Tennessee Supreme Court has stated that "in order to sustain an action for money had and received there must be no consideration for the money or the consideration must have failed." *Id.* (citing *Ryan*, 744 S.W.2d at 505). Here, there is no dispute that MajestaCare received anesthesia services for its enrollees from Bristol Anesthesia and therefore Bristol Anesthesia was entitled to at least some payment. As discussed above, there remains a disputed issue of fact as to whether Bristol Anesthesia received overpayments and if so, the extent of those overpayments. Without a determination of whether Bristol Anesthesia was unjustly enriched by the overpayments, the Court cannot conclude at summary judgment if the claim for wrongful recoupment should be dismissed. The motion for summary judgment as to the wrongful recoupment is DENIED.

## IV. Conclusion

Bristol Anesthesia's Motion for Partial Summary Judgment, [Doc. 52], is DENIED. Likewise, MajestaCare's Motion for Summary Judgment, [Doc. 55], is DENIED. Trial on this matter is scheduled for Tuesday, September 26, 2017, at 9:00 a.m. A final pretrial order will be entered separately.

So ordered.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE